P. D. CECCA *vs.* JOHN F. MAROTTO.

MARCH 26, 1952.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This action of assumpsit was heard in the superior court by a justice sitting without a jury. He rendered a decision in favor of the plaintiff for $3,612.80 and the defendant duly prosecuted his bill of exceptions to this court.

The plaintiff, who has declared on book account and on the common counts, is suing to recover commissions allegedly due him from defendant and certain sums of money paid out and expended by plaintiff for defendant's use and benefit at his request. Only some of the large number of exceptions taken are now being pressed. These include certain exceptions to the rejection of evidence attempted to be introduced by defendant and an exception to the decision itself. All other exceptions not briefed or argued are deemed to be waived.

It appears from the evidence that plaintiff, of Winthrop in the commonwealth of Massachusetts, was a fruit broker; that defendant, of Providence in this state, was the owner of a fruit company; and that they entered into business relations. The defendant, who was a successful printer for many years and who had acquired some property, decided in the early part of 1949 to embark in the wholesale fruit business, as an additional activity, under the name of Jay Fruit Company, located in Providence. An arrangement was entered into sometime prior to April of

that year whereby the plaintiff as broker would purchase in Boston, Massachusetts, for delivery at defendant's place of business, such produce as the latter, through his agent, would order daily from plaintiff. The business was conducted on that basis until the middle of October 1949 when it was discontinued by defendant.

The evidence shows that his fruit company was set up as follows. He hired as bookkeeper a man who was regularly employed as a clerk in a bank. This bookkeeper personally made out and signed in the name of the Jay Fruit Company all the checks for that company. Many of these were signed with the amount left blank as will hereinafter more fully appear. The defendant himself signed no checks. These two men would spend between two and four hours every Sunday morning going over the books of the company. The defendant also employed Albert Martucci as general manager of the business and the latter's brother as handy man and truck driver. The general manager ordered the fruit through plaintiff in Boston and had charge of the details of the company's operation.

Under the arrangement between the parties the plaintiff as broker bought fruit for the defendant either at a public fruit auction held in Charlestown, Massachusetts, or at the terminal wholesale fruit markets located in South Boston in that state. His brokerage fee was 10 cents a package for purchases at the auction and 5 cents a package for transactions at the terminal markets. In April 1949 at the outset of business relations defendant had a small credit at the auction house, but that was quickly exhausted and thereafter plaintiff had to pay cash for whatever he purchased there for defendant. For a considerable time the latter reimbursed plaintiff at short intervals for such advances but toward the conclusion of their relationship he apparently failed to do so. The defendant, who kept a credit at the terminal markets, was billed by them directly each week for the fruit ordered by plaintiff. However, the

evidence is somewhat conflicting as to whether or not this credit was maintained by defendant during part of September and October, 1949. There was some evidence that plaintiff had to make payments also to certain markets on behalf of defendant.

The plaintiff's testimony respecting the way in which the parties did business was corroborated by that of defendant's witnesses. The latter's general manager testified as follows: "A. Mr. P. D. Cecca would call me every morning. I would place an order with him. He would try to fulfill that order. And in the meanwhile our trucks, or my representative, my brother, that worked for me would go to Boston with a blank check and any purchases that Mr. Cecca made for me, as much as he could on the order that I had placed with him, he would get a blank check and fill it out to the amount for whatever he had bought for me plus adding his brokerage to it; that is, any purchases made at the auction in Boston. Then we had a credit in the terminal in Boston which was charged directly to us and once a week our bills would have to be paid in the terminal, that is where we had our own credit."

The defendant's truck driver stated: "A. I would bring a check in every Monday made out from Jay Fruit Company, that is, a blank check, and Mr. Cecca would go into the offices and fill them out himself and pay for whatever sum was the amount owed to the companies. Q. That would be at the terminal? A. At the terminal." As to the method of delivery, the witness said: "A. Most times I had my own truck there, that is, the company's truck there, and we would make the company's truck load up first and send him home; then when we didn't have the company's truck there we would give it to some transportation company to take to Providence."

The plaintiff began the instant proceeding by writ dated January 3, 1950 claiming that defendant owed him $6,668.58 as a result of their business relations. However, before the

action came to trial defendant paid plaintiff $3,300 on the claim. The latter presented his case through his own testimony and that of his attorney, introducing ledger sheets kept in the regular course of business, certain checks, and a large number of slips or so-called auction catalogues showing the dates and prices of individual purchases made for defendant and the names of the sellers. The plaintiff makes no claim for money owed growing out of dealings prior to September 9, 1949, stating that he was paid in full up to that date. The present demand relates only to transactions between September 9 and October 14, 1949, and he breaks down his claim for that period as follows. He says that for business between September 9 and 14 he was owed $2,585.89, for which amount he received from the fruit company a check which went to protest. He was paid for transactions between September 16 and 30 but for those from October 3 to October 7 he was owed $2,232.60. He received a check covering that amount which also went to protest. Between October 10 and October 14 he did business amounting to $1,839.50 which remains unpaid. After correcting errors in figuring he testified the amount owed was $6,668.58 when suit was brought and before the payments aggregating $3,300 were made by defendant.

The exceptions numbered 1 to 5 relate to rulings of the trial justice preventing defendant from cross-examining plaintiff as to transactions which they had between the starting of business relations and September 9, 1949. In sustaining plaintiff's objections to such examination the trial justice made the following statement: " * * * Let's find out what the claim of the plaintiff is, and his claim is narrowed to a relatively short period, from September 9th to October 14th; and then you may be able to show in defense that money was paid prior to that time for which you received nothing and that will be a credit then for this period for which the plaintiff is making claim. * * * I am not in any sense cutting you off because you will have an

opportunity. The question is as to the time for it, that is really the point."

The defendant argues that the above ruling was erroneous. He contends that the account between the parties was open and continuous, constituting a single demand not susceptible of division, and that he was entitled to cross-examine on the entire account, citing *Potter* v. *Harvey,* 34 R. I. 71. The principles of law laid down in that case, which has been generally followed by this court, are undoubtedly sound. However, we do not deem that case applicable here. It has nothing to do with the scope of cross-examination relating to an account but deals with the right to sever a single account for the purpose of bringing suits on its different parts. Moreover, it is stated in such opinion that the holding is made in the absence of special circumstances.

It is our opinion that the account in the case at bar is not an open, continuous, single running account between the parties. The uncontradicted manner in which they conducted their business, as hereinbefore described by the plaintiff and defendant's witnesses, shows clearly that the business was operated at least on an adjustment and closing of the account each week if not more often. In view of all the circumstances herein, including the nature of the account, and since the ruling of the trial justice did not entirely shut off defendant from inquiring about pertinent matters in the prior account but merely postponed their introduction until he submitted his defense, we find that such ruling was without error. The above exceptions are therefore overruled.

Exceptions 8 to 26 inclusive and 34 and 35 are to rulings of the trial justice preventing defendant from asking plaintiff on cross-examination about possible transactions with persons from whom he might have made purchases for defendant subsequent to September 9, 1949. In making his ruling the trial justice stated: "I will sustain the objection

because it doesn't appear it is material. It may be material later but it doesn't now until we get the defense and at this time I think it is immaterial." The issue before the court was whether defendant owed plaintiff any money because of their business dealings. At the time this question arose possible dealings of the plaintiff with third persons had not been shown to be relevant or material and the subject had not been covered in the direct examination of plaintiff. Furthermore the trial justice ordinarily has a broad discretion in determining how far he will permit cross-examination to proceed in such circumstances. We do not find in the present instance that he abused such discretion or that his ruling amounted to prejudicial error. In our opinion the exceptions under consideration are without merit and they are overruled.

Exceptions 39 and 40 are to the refusal of the trial justice to admit in evidence ten checks of the Jay Fruit Company relating to dealings between the parties and dated between July 14 and September 2, 1949. Apparently they were offered not for the specific purpose of proving payment of moneys due between September 9 and October 14, 1949, but on the theory that the account in question was an open, continuous, single running account and that defendant had a right to go into it from its inception to its conclusion regardless of its particular nature. The defendant took the same position in arguing his exceptions numbered 1 to 5 which we have overruled. In our opinion the previous discussion relating to those exceptions applies equally to the two exceptions we are now considering and they are also overruled.

The defendant's remaining exception is to the decision of the trial justice who stated in substance that the testimony revealed a very loose way of doing business; that the defendant and his bookkeeper devoted little time thereto and did not know the details of how the business was carried on or what goods were bought; that the general manager and the truck driver knew nothing about the

financial side of the business; that the defendant did not testify that the goods allegedly bought for him had not been delivered; and that blank checks were signed by the bookkeeper with defendant's apparent approval. The trial justice held that in the circumstances he felt he could not do otherwise than accept plaintiff's statement as to the amount of the existing balance between the parties and he found against defendant.

We have examined the evidence and cannot say that the trial justice was clearly wrong in reaching his decision. He evidently considered that plaintiff had made out a prima facie case against defendant and that the latter had shown no defense thereto by way of payment, failure of delivery, or otherwise. The defendant apparently relies on the principle of law set out in *James C. Goff Co.* v. *Lunn*, 48 R. I. 416, and other like cases to the effect that where books of account show that goods were delivered to one person and charged to another the books alone do not make out a prima facie case against the person to whom the charge was made.

In our judgment the above cases do not apply here. The evidence as a whole shows that plaintiff's charge was made against defendant with whom he was doing business and that the goods bought for him were delivered at his request and approval either to his own employee, the truck driver, or to a public carrier for delivery to him. In that respect the instant case more nearly resembles *P. D. Cecca & Co.* v. *Antonelli*, 51 R. I. 280, in which the plaintiff recovered in circumstances somewhat similar to those in the case at bar. The exception to the decision of the trial justice is over-ruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment for the plaintiff on the decision.

*Ralph Rotondo, Edward Capomacchio,* for plaintiff.
*Joseph Mainelli,* for defendant.